Judge Pauley

08 CV 00535

Kennedy, Jennik & Murray, P.C.
Attorneys for Plaintiffs
113 University Place - 7th Floor
New York, New York 10003
(212) 358-1500
Thomas M. Murray (TM 6605)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JAMIE ABREU and CHRISTIANA GARRISON,

                    Plaintiffs

          -against-

JOHN B. MATTINGLY, as Commissioner of the
Administration for Children's Services of the City of
New York, and ADMINISTRATION FOR CHILDREN'S
SERVICES OF THE CITY OF NEW YORK,

                    Defendants
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

COMPLAINT

RECEIVED JAN 22 2008 U.S.D.C. S.D.N.Y. CASHIERS

      Plaintiffs, by their undersigned attorneys,, allege as follows.

## INTRODUCTION

      1.     This is an action brought by a parent and a grandmother, who is a legal guardian of a child, who lost their placements in a day care center because of the termination and closure of a federally funded day care center, which is contrary to the public interest and which is being accomplished in a manner that is contrary to the law.

## JURISDICTION

2.      Plaintiffs invoke this Court's jurisdiction pursuant to 28 USC § 1331.

## PARTIES

3.      Plaintiff Jamie Abreu is the mother of twin boys, Darron and Jaden Shafe, who are three years of age. Darron and Jaden attended the family day care program of the Lucille Murray Child Development Center ("LMCDC") a not-for-profit corporation which exists for the purposes of providing family day care, day care, kindergarten and after-school services for children ages 1 to 12. It is located at 300 East 140th Street, Bronx, New York. Plaintiff Christiana Garrison is the grandmother and legal guardian of her eight-year old granddaughter Diamond Benjamin. Diamond is developmentally delayed and was enrolled in the after-school program at LMCDC.

4.      Defendant Administration for Children's Services ("ACS") is an administrative agency of the City of New York which, among other functions, disburses federal, state, and city funds to day care centers providing services to low-income families throughout the City of New York. ACS is located at 66 Williams Street, New York, New York 10038. John B. Mattingly is the Commissioner of ACS and is sued in that capacity.

## FACTS

5.      LMCDC was created in around 1975. It has operated a day care center at 300 East 140th Street since that time. The center provides services on a sliding-scale fee basis for children. It is open from 8:00 a.m. to 6:00 p.m. ACS directly leases the building from the landlord. LMCDC receives federal funds pursuant to the Child Care Development Block Grant, 42 U.S.C.

§ 98 58a.

6. ACS notified the Board of Directors of LMCDC on November 16, 2007 that they were terminating the contract for services between ACS and LMCDC effective January 11, 2008. ACS did close the center on January 11, 2008.

7. ACS wrote a letter to the parents on November 19, 2007 advising them that the child care services contract between ACS and LMCDC was expiring. ACS met with the parents on November 26, 2007 advising them what their other options were. ACS does not provide for a hearing before an impartial official concerning the closing and defunding of day care centers.

8. ACS advised the parents that they were closing the center because the building housing the center was in a state of disrepair and it would cost the City too much to repair it.

9. Under the terms of the lease between the landlord for the center and ACS, ACS could terminate the lease with one year's notice. ACS terminated the lease on October 19, 2007. Therefore, ACS will be required to pay rent on the building through October 2008.

10. For the period January through October 2008, ACS will pay over $300,000 in rent for the empty building.

11. Under the terms of the contract between ACS and the landlord, ACS' cost for repairs to the building were limited to $347,335.00.

12. ACS later issued a press statement, on November 21, 2007, stating that there was a misappropriation of funds at LMCDC, and that this finding, among other factors including the poor physical condition at the site, played a significant role in the decision to terminate the contract at LMCDC.

13. In the past, when ACS found that sponsoring boards of day care centers had

3

misused funds, it would terminate the contract and replace the outgoing agency with an interim sponsor until the next request for proposal was issued. Upon information and belief, ACS never in the past closed a center for this reason, but rather always transferred the contract to another sponsoring board so that vital services to the children, families and the community would not be interrupted.

14. A potential interim sponsor, Episcopal Social Services ("ESS"), advised ACS and District Council 1707, American Federation of State, County and Municipal Employees, AFL-CIO ("DC 1707"), the union representing the employees of LMCDC, that it was willing to take over the contract for child care services and would explore taking over the lease with the landlord.

15. ACS notified ESS that they would not transfer the contract because of the high cost of renovating the center.

16. Plaintiff Abreu's children were eligible to enter the LMCDC two-year old classroom last fall, but ACS froze enrollment without explanation. Her children remained in the LMCDC family day care program.

17. The family day care program funded by ACS places children in the homes of individual providers who provide child care services, enabling the parents to work.

18. A child's early childhood education program does not begin until they are enrolled into a classroom in a center, where they are taught by teachers with master's degrees in education, or who are working towards a master's degree, as well as assistant teachers with bachelor's degrees, or who are working toward a bachelor's degree, and teacher aides. Family day care providers are not required to have master's degrees or bachelor's degrees.

19. Abreu canvassed all of the ACS centers on a list provided by ACS looking for placements for her sons, but was unable to find a center with space. She then obtained a list for all of the ACS centers in the Bronx, but found only one that had space for her sons. That center was in Throgs Neck, which was too far from her home and work to enable her to enroll her children.

20. Abreu has continued to take her sons to the provider home so that she is able to continue working. However, her sons are not receiving the pre-school education to which they are entitled.

21. Studies show that a good pre-school education is a key to success in school in later years.

22. The closing of LMCDC left Abreu without an alternative early childhood educational program to enroll her sons. She was not given a hearing or any other due process rights to contest ACS' closing of LMCDC, which effectively terminated her right to enroll her children in a pre-school program.

23. Garrison's granddaughter, Diamond, is developmentally delayed and goes to school at the Northside Center for Child Development in Harlem until 2:00 p.m. Diamond took the school bus to LMCDC after 2:00 p.m. for the after-school program. When her school was closed, Diamond would spend full days at LMCDC.

24. There are no other after-school programs in the area for Diamond to attend. The New York City Department of Youth and Child Development ("DYCD") Out-of-School programs are not staffed to be able to care for a child with special needs.

25. Garrison placed here child with an unlicensed provider who is caring for more

children than is legally permissible.

26. The closing of the child care program at LMCDC left Garrison without an alternative after-school education program to enroll her granddaughter.

27. Garrison was not given a hearing or any other due process rights to contest ACS' closing of LMCDC, which effectively terminated her right to enroll her granddaughter in an acceptable after-school program.

## FIRST CAUSE OF ACTION

28. Plaintiffs restate and incorporate by reference, in each cause of action set forth below, the facts set forth above in paragraphs 1-27 above.

29. By terminating the LMCDC program "without cause" and without an opportunity for redress, defendants have violated plaintiff Abreu's and Garrison's right to due process of law, and that of all other families with children being provided with child care services at LMCDC.

## SECOND CAUSE OF ACTION

30. Plaintiffs restate and incorporate by reference, in each cause of action set forth below, the facts set forth above in paragraphs 1-29 above.

31. Defendants, by failing to provide parents with viable alternative child care arrangements, violated their obligations under 45 CFR § 98.15 and 45 CFR § 98.18.

## PRAYER FOR RELIEF

WHEREFORE, petitioners pray that this Court:

1. Enter an order requiring Defendant ACS to hold accelerated hearings concerning the closing of the day care program at LMCDC.

2. Enter a permanent injunction restraining and enjoining respondents, their agents, attorneys, and representatives from closing any other centers without affording affected parents due process and a hearing before defunding and closing day care centers in the future.

3. Award plaintiffs attorneys' fees and costs; and

4. Grant such other and further relief as is just and equitable under the circumstances.

Dated: New York, New York
       January 22, 2008

                        KENNEDY, JENNIK & MURRAY, P.C.
                        Attorneys for Plaintiffs

                        By: _____
                        Thomas M. Murray (TN 6605)
                        113 University Place
                        New York, NY 10003
                        (212)358-1500
                        (212)358-0207 (fax)